# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

JEALEE ANNETTE HALL-JONES,

      Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

No. 16-CV-0064-LTS

**MEMORANDUM OPINION
AND ORDER ON REPORT AND
RECOMMENDATION**

_____

## I.   INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. Doc. No. 17. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Jealee Hall-Jones' application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et. seq.* (Act).

Hall-Jones filed timely objections (Doc. No. 18) to the R&R. Although the Administrative Law Judge (ALJ) found Hall-Jones was disabled between October 16, 2012, and December 31, 2013, Hall-Jones contends that the ALJ erred in determining she was not disabled between January 1, 2014, and the date of his decision, January 13, 2015. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. Judicial Review of the Commissioner's Decision

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.     *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error").

As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* The Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3D 803, 815 (8th Cir. 1994). As this court has previously stated, "[e]ven if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all . . . ." *Lynch v. Astrue*, 687 F. Supp. 2d 841 (2010) (citing *Coop. Fin. Assoc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996)). This court will provide de novo review of all issues that might be addressed by any objection, but will review for clear error matters to which no objection at all has been made. *Id.*

### III.   BACKGROUND INFORMATION

Hall-Jones alleged disability due to numerous conditions, including migraine headaches, chest pain, degenerative disc disease, loss of feeling and syncope. AR 18. The record demonstrates that she also suffers from type 2 diabetes. AR 17. At issue is the change in Hall-Jones' residual functional capacity (RFC) between the period for which

the ALJ determined Hall-Jones was disabled and the period for which the ALJ found that she was not disabled. The ALJ found that prior to January 1, 2014, Hall-Jones had the RFC to perform sedentary work, with the following restrictions:

> [C]laimant should avoid moderate exposure hazards, such as dangerous machinery and unprotected heights. The claimant should not climb ladders, ropes, or scaffolds. The claimant should avoid more than moderate levels of noise. She can only frequently reach overhead bilaterally. *Lastly, the claimant would miss 2 days of work per month*.

AR 17 (emphasis added). A vocational expert (VE), Melinda Stahr, testified that there were no jobs in the national economy that an individual missing two days of work per month could perform. AR 23.

However, the ALJ determined that as of January 1, 2014, Hall-Jones' migraines had improved to the point that a new RFC analysis was necessary. The ALJ found an identical RFC, except for one change. Rather than missing two days of work per month, Hall-Jones would be "off task for approximately 10-15% of the work day." AR 24. The VE testified that there were jobs in the national economy that a person with Hall-Jones' physical limitations could perform in spite of being off task for up to 15% of the day.

Hall-Jones makes a number of arguments that broadly fall into two categories. First, Hall-Jones argues that the ALJ's RFC finding for the period beginning January 1, 2014, is not supported by substantial evidence. Second, she argues that the VE's testimony that there were jobs in the national economy that Hall-Jones could perform was flawed and, therefore, does not constitute substantial evidence in support of a finding that Hall-Jones was not disabled.

## IV.   THE R&R

Judge Williams began his analysis by addressing the ALJ's stated basis for re-evaluation of Hall-Jones' RFC as of January 1, 2014. Judge Williams recommended upholding the January 1, 2014, RFC determination because "[t]he medical evidence in

this case is susceptible to the ALJ's conclusion that claimant's headaches improved in 2014." Doc. No. 17 at 15. Specifically, Judge Williams stated:

> [O]n January 20, 2014, claimant visited her treating physician and reported "I still have the same amount of headache[s], however, I only went to the hospital twice in the past four months, which is an improvement." (AR 651). Her doctor agreed, noting that "[t]his is a big improvement for her." *Id.* When seen for chest pain six days later, she reported "no headache." (Doc. 592-93). On March 24, 2014, claimant reported she was still experiencing four to five migraine headaches a week, but told her doctor that "[s]he does feel like her headaches have improved over time on the Depakote." (AR 527). In another doctor's visit on May 3, 3014, to address hip pain, claimant again reported "no headaches." (AR 589). In a follow-up exam on July 21, 2014, to address her migraine headaches, the medical notes indicate that claimant's "more prolonged HA [headaches] [were] down as reported she only had to go to ER twice in the last 4 months for HA . . . ." (AR 646). The notes further indicate that claimant reported that she was "tolerating her current medications well and does feel they have helped with the severity of her HA but not the frequency." *Id.* This general improvement in the severity of claimant's headaches contrasts sharply with the severity of her headaches in 2012 and 2013. *See, e.g.*, AR 378 (describing daily moderate to severe headaches with mild photophobia in May 2012); AR 464 (describing a moderately severe migraine headache in July 2013 that lasted several days causing nausea and photophobia.

*Id.* at 15-16. Therefore, although there was "some evidence suggesting that her migraine headaches did not improve significantly in 2014," Judge Williams found that "substantial evidence in the record as a whole supports the ALJ's conclusion that the severity of claimant's migraine headaches decreased. *Id.* at 17. Judge Williams further found that the hypothetical posed to the VE was appropriate and, therefore, that the VE's opinion constituted substantial evidence to support a finding of "not disabled." *Id.* at 11-13.

## V. ANALYSIS

Hall-Jones challenges the ALJ's RFC for the period beginning January 1, 2014, and the determination that there were jobs available in the national economy based on the

new RFC.  Hall-Jones asks that I reject the R&R, vacate and reverse the ALJ's denial of disability and award benefits, or in the alternative, remand to the ALJ for a new hearing.

## A.    *The New RFC*

### 1.    *Summary of the 2014 RFC*

The ALJ found that beginning January 1, 2014, Hall-Jones' RFC changed such that she could perform:

> [S]edentary work . . . except that the claimant should avoid moderate exposure hazards, such as dangerous machinery and unprotected heights. The claimant should not climb ladders, ropes, or scaffolds.  The claimant should avoid more than moderate levels of noise.  She can only frequently reach overhead bilaterally.    The claimant would be off task for approximately 10-15% of the work day.

AR 24.  The ALJ accounted for the change in the RFC by stating:

> Beginning January 1, 2014, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling limitations.  More specifically, the medical findings do not support the existence of limitations greater than the above listed residual functioning capacity. . . .  However, it is again noted that the claimant's headaches significant[ly] improved by January 2014, which would result in her being able to attend work on a more reliable basis.  Even so, the above residual functional capacity accounts for periods in the day where the claimant's daily headaches may adversely affect her ability to be on task.

***

> The claimant takes medications appropriate to her conditions, which successfully treat her conditions without materially adverse side-effects (allegations of being sleeping or wired, and having diarrhea noted).  (Ex. B3E, B4E, B5E, B6E, B8E).  Moreover, the claimant has not required long-term intensive treatment for any of her conditions.  Lastly, a review of the claimant's work history shows that the claimant worked only sporadically prior in the recent time prior to October 2012, which raises a question as to whether the claimant's continuing unemployment was actually due to medical impairments.

On January 28, 2014, the claimant reported that she had no headaches. (Ex. 13F/43); on March 24, 2014, she reported that her headaches occurred every day but were controlled on medication, or that they were mild. (Ex. 12F/p87-92). By July 21, 2014 she told Dr. Chang that she had about 4 migraines a week, but she had gone to the ER only twice in the last 4 months (Ex. 15F/3).

So it looks as if the claimant's headaches, while once painful and somewhat debilitating, were resolving to a more tolerable level on medications in early 2014. Interestingly, her mental status performance at the examinations was intact. She testified that bright lights and noises affected her headaches.

AR 25. The ALJ also considered Hall-Jones' report of her daily activities, an evaluation by state agency medical consultants dated March 1, 2013, and the report by Hall-Jones' treating physician, John Lancaster, M.D., dated August 4, 2014. AR 19-22.

Hall-Jones argues that the ALJ's finding that her migraines improved (thus necessitating a new RFC finding) is not supported by substantial evidence on the record as a whole because her migraines were still severe through 2014. Further, she contends the ALJ erred in determining her new RFC because the ALJ discounted the opinion of Hall-Jones' treating physician.

### 2. *Discussion*

The ALJ's RFC determination must be supported by substantial evidence. The RFC is a medical question; therefore, the RFC determination must be supported by medical evidence. *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). Ordinarily, RFC evidence from a treating, or at least an examining, physician is required. *Fitzgerald Morris v. Colvin*, No. C14-4068-LTS, 2016 WL 3360506 at *8-9 (N.D. Iowa June 16, 2016). To determine a claimant's RFC, the ALJ is required to give a treating physician's opinion "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v.*

*Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); 82 Fed. Reg. at 5869-70, 5880-81. The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). Ultimately, however, the RFC determination is designated to the ALJ. *Wagner*, 499 F.3d at 849 *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Here, the record is devoid of any medical basis for the ALJ's conclusion that Hall-Jones would be off task for 10 to 15% of each day. In his report dated August 4, 2014, Hall-Jones' treating physician, Dr. Lancaster, determined that Hall-Jones would miss three days of work per month. AR 643. Although Dr. Lancaster did not explain the basis for this finding, it can be inferred that this opinion was based on the frequency of severe migraines that sent Hall-Jones to the hospital, Dr. Lancaster's office or the emergency room (ER). In 2012, Hall-Jones went to the ER four times. AR 338, 341, 343, 349. This period of frequent ER visits was precipitated by an allergic reaction to a Botox injection, which seemed to increase the severity of Hall-Jones' migraines. AR 349, 384-86.

Hall-Jones also visited the ER four times in 2013 (AR 407, 533, 569, 575) and three times during the first eight months of 2014 (AR 563, 589, 560). In 2013, Hall-Jones had almost-monthly checkups with Dr. Lancaster to treat severe, current migraines, diabetes and neck pain. AR 415, 446, 453, 464-84, 492, 506, 514. In July 2013 alone, Hall-Jones saw Dr. Lancaster four times (in addition to an ER trip during the same week) for a migraine that would not go away. AR 464-84. Although there was some improvement in Hall-Jones' migraines in 2014, the record indicates that she had a migraine that lasted three days in July and still had severe headaches that "occur weekly," even if they were better controlled under current medication. AR 523, 534. Hall-Jones testified, and the medical record supports, that these migraines made her photophobic, phonophobic and nauseated. AR 21. When Hall-Jones ran out of pain medication, the migraines came back. AR 534. When pain medication was not enough, Hall-Jones

treated her symptoms by retreating to a dark, quiet room and avoiding all light, sound and movement.  AR 86.  Hall-Jones testified that she would self-treat in this way a couple times per week.  *Id.*

In addition to extensive evidence that Hall-Jones suffered frequent, severe migraines that caused her to miss work, there is substantial evidence that she suffered syncope episodes in connection with her other medical impairments.  The ALJ stated that he did not fully consider the effects of syncope episodes because "there is insufficient evidence to establish allegations of episodic blackouts as a medically determinable impairment."  AR 17.  This opinion is not supported by the medical record.  Although Hall-Jones' doctors are unable to pinpoint a precise neurological cause for her blackout episodes (AR 688), each of her treating doctors and the state agency medical consultants accepted her blackouts as an established medical condition.  The state agency medical consultant, Dr. John Kuhnlein, D.O., went so far as to impose several limitations based on the fact that Hall-Jones suffers frequent, unpredictable blackouts.  AR 395-96 (stating that she should rarely bend "[b]ecause this is a trigger for her syncope episodes" and never use uneven surfaces, ladders and stairs "because of unprovoked syncope episodes").  Failing to evaluate the effect of Hall-Jones' syncope on her RFC – without identifying good reasons to reject the findings of Dr. Lancaster and the state medical consultants – was clear error.

The ALJ also discounted medical evidence that Hall-Jones was restricted in her ability to stand and walk.  Dr. Kuhnlein found that Hall-Jones could stand, walk or stoop only occasionally due to her left hip pain and left-side sensory deficits.  AR 395.  This determination was supported by Dr. Kuhnlein's objective finding that Hall-Jones straight leg raising was positive on the left (although negative on the right), and that there was muscle deterioration in her left calf.  AR 394.  Her gait was described as "unsteady," and she was "holding her arms out for balance."  *Id.*  Dr. Kuhnlein noted lumbosacral tenderness.  *Id.*  These findings were supported by an MRI in October 2013, which found "mild bulging at L4-5 and L5-S1" and "a small annular tear left posterolaterally."  AR

620. Although the objective findings indicate only "mild bulging" at the lumbar-sacral level, this pain cannot be considered separately from Hall-Jones' syncope episodes and migraines, which when combined with a weakened limb and hip pain, may explain her loss of balance. This is consistent with Dr. Lancaster's opinion that Hall-Jones cannot stand more than 2 hours in an 8 hour day. AR 643.

The ALJ decided not to give Dr. Lancaster's opinion significant weight for the period beginning in January 2014, stating:

> In August 2014, Dr. Lancaster, a treating physician, completed a Medical Source Statement wherein he opined that the claimant can sit up to 6 hours in an 8 hour day, lift no more than 10 pounds on the job, and would miss more than 3 days of work per month. The undersigned affords Dr. Lancaster's overall opinion significant weight, from the established onset date until January 1, 2014. However, by January 1, 2014, the evidence objectively indicates that the claimant's headaches were beginning to be well-controlled, and the weight afforded to Dr. Lancaster's opinion is diminished. Further, the undersigned accepts a finding of sedentary work in light of multiple pain complaints, including ongoing daily headaches. However, the opinion that the claimant can stand/walk less than 2 hours in an 8 hour day is without merit, considering generally intact physical findings through the relevant period. (Ex. B14F).

AR 22. As stated above, the RFC finding is a medical determination, which must be supported by some medical evidence in the record, with the treating physician's opinion given controlling weight unless it is unsupported. Here, the ALJ did not adequately explain why he discounted Dr. Lancaster's assessment. *Singh*, 222 F.3d at 452. The ALJ did not conclude that Hall-Jones was not a credible source for information about her symptoms, only that her subjective complaints were not supported by objective medical evidence. The ALJ did not find that Dr. Lancaster's opinions were inconsistent with Hall-Jones' other treating physicians, or with the state-agency consultants. There is no evidence that Dr. Lancaster was unaware of the apparent improvement in Hall-Jones' migraines when he submitted this opinion. Indeed, the records indicate that Dr. Lancaster believed Hall-Jones would miss three days of work each month *in spite of* the progress

made. Finally, there is no source in the record, medical or otherwise, supporting the ALJ's finding that Hall-Jones would be off task 10 to 15% of the day. *See, e.g., Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (RFC finding for off task time based on ALJ's "own surmise" not supported by substantial evidence).

When there is uncontroverted evidence of an impairment or combination of impairments causing substantial absence from work, it is error not to consider this absence. *See, e.g. Baker v. Apfel*, 159 F.3d 1140, 1145-46 (8th Cir. 1998) (where uncontroverted record showed claimant could not stand for long periods of times and had daily migraines which would cause him to miss work, it was error for the ALJ to conclude otherwise); *Cosnyka*, 576 F. App'x at 46. This court has previously remanded cases in which the ALJ failed to fully evaluate the effects of severe, lasting migraines on a claimant's ability to work. *Mann v. Colvin*, 100 F. Supp. 3d 710, 722-23 (N.D. Iowa 2015); *Stewart v. Colvin*, No. C13–2029, 2014 WL 1165870 at *13-14 (N.D. Iowa Mar. 21, 2014). Here, the ALJ did not adequately consider the effects of migraines, syncope, and joint pain in conjunction on Hall-Jones' ability to work. This is particularly true with regard to the amount of time that Hall-Jones would be away from work due to these impairments. No evidence of record supports ALJ's finding that this combination of ailments would result in Hall-Jones being off task for 10 to 15% of the workday. Hall-Jones' treating physician determined that the same combination of ailments would result in three days of work missed per month and this determination is largely consistent with the state agency consultant's findings. Accordingly, I find that the ALJ's RFC determination is not supported by substantial evidence. Hall-Jones' objection will be sustained and this case will be remanded to the Commissioner for further development of the record concerning Hall-Jones' RFC for the period beginning January 1, 2014.[1]

---

[1] Hall-Jones argues that reversal and award of benefits is appropriate because she was determined to be disabled for the period prior to January 1, 2014. Doc. No. 15 at 2. "Where the record overwhelmingly supports a disability finding, and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal [without remand] is appropriate." *Thompson v.*

***B.*** ***The VE's Testimony***

In response to hypothetical questions based on the ALJ's RFC findings, the VE testified that there are jobs available in the national economy that a person who is off task 10 to 15% of the day can perform. Because I have already concluded that the ALJ's RFC for the period beginning January 1, 2014, is not supported by substantial evidence, it follows that opinions provided by the VE based on that RFC likewise do not constitute substantial evidence. On remand, the ALJ will have to consider whether additional VE testimony is necessary in light of the ALJ's reconsideration of Hall-Jones' RFC.

## *VI. CONCLUSION*

For the reasons set forth herein:

1.      Plaintiff's objections (Doc. No. 18) to the Report and Recommendation (Doc. No. 17) are **sustained** and the Report and Recommendation is **not adopted**. *See* 28 U.S.C. § 636(b)(1).

2.      The Commissioner's determination that Hall-Jones was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this order.

3.      Judgment shall enter in favor of the plaintiff and against the defendant.

---

*Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992); *see also Dillon v. Colvin* 210 F. Supp. 3d 1198, 1212-13 (D.S.D. 2016) (reversing the Commissioner's decision without remand where VE testified that there were no jobs available in the national economy given claimant's RFC); *Stickler v. Colvin*, 173 F. Supp. 3d 925, 943 (D.S.D. 2016) (same). I find, however, that this is not a situation in which a direct award of benefits is appropriate. Although the ALJ's RFC determination for the period beginning January 1, 2014, was flawed, the record requires further development to determine Hall-Jones' RFC in light of her improved migraines in 2014. Therefore, reversal with remand is appropriate.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2017.

_____
Leonard T. Strand, Chief Judge